UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INSURANCE SAFETY CONSULTANTS LLC and CHRISTOPHER ROBERTS, | § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | CIVIL ACTION NO. 3:15-CV-2183-B |
| CARRIE D. NUGENT, | | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Dismiss Amended Counterclaim (Doc. 27). For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** the Motion.

### I.

### BACKGROUND

This case has its origin in a business dispute between Plaintiff Christopher Roberts ("Roberts") and an individual named Kevin West ("West"). Roberts and West used to co-own a company called Safety and Environmental Solutions, LLC ("SES"). Doc. 1, Compl. ¶¶ 7–8. After a disagreement about SES's ownership, Roberts left the company in January 2013 to form Plaintiff Insurance Safety Consultants LLC ("ISC"). *Id.* ¶ 9. West and SES then sued Roberts and ISC in state court (the "SES Suit"). *Id.* ¶ 10.

About a month later, ISC hired Defendant Carri D. Nugent ("Nugent").[1] *Id.* ¶¶ 7, 9. One

---

[1] Nugent has apparently been misnamed as "Carrie D. Nugent" in the Complaint. *See* Doc. 10, Def.'s Answer ¶ 3.

- 1 -

of her responsibilities at ISC was to set up email accounts for the company's employees, including Roberts. *Id.* ¶ 16. While setting up Roberts's email, Nugent "configured an email application . . . on her personal laptop to allow her to access . . . Roberts'[s] email." *Id.* ¶ 17. Roberts and ISC say she was not authorized to do this, although she disagrees. *Id.*; Doc. 10, Answer ¶ 17. Either way, all parties agree that Nugent had access to Roberts's email during her employment. Doc. 1, Compl. ¶ 17; Doc. 10, Answer ¶ 17.

After ISC hired Nugent, West and SES added her as a defendant in the SES Suit and deposed her in March 2013. Doc. 1, Compl. ¶¶ 10–11. But at a temporary injunction hearing the next month, Nugent recanted some of her deposition testimony.[2] *Id.* ¶ 13. Shortly thereafter, ISC fired her, and she returned to SES. *Id.* ¶ 14. Back at SES, Nugent continued to access Roberts's email and passed along the information she retrieved to West, according to Plaintiffs. *Id.* ¶¶ 18–19. When Plaintiffs learned what she was doing, they filed this lawsuit, alleging that she violated the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, and the Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2510 *et seq.* Doc. 1, Compl. ¶¶ 21–31.

In response, Nugent filed counterclaims against Roberts and ISC for (1) declaratory judgment; (2) wrongful discharge under *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985); (3) intentional infliction of emotional distress; (4) attorney's fees; and (5) Anti-SLAPP (Strategic Lawsuits Against Public Participation) remedies, Tex. Civ. Prac. & Rem. Code § 27.001 *et seq.* Doc. 15, Def.'s First Am. Counter-Claims ¶¶ 29–52 [hereinafter "Def.'s FAC"]. Plaintiffs now

---

[2] Plaintiffs allege that Nugent admitted to testifying falsely, while Nugent appears to concede only that her deposition testimony was inaccurate. *See* Doc. 1, Compl. ¶¶ 12–13; Doc. 10, Answer ¶¶ 12–13. The Court need not resolve this dispute to decide the Motion.

move to dismiss Nugent's counterclaims. Doc. 27, Pls.' Mot. to Dismiss. Nugent has responded to the Motion, and Plaintiffs have replied. Doc. 32, Def.'s Resp. Br. in Opp. [hereinafter "Def.'s Resp."]; Doc. 35, Pls.' Reply Br. in Supp. [hereinafter "Pls.' Reply"]. Thus, the Motion is ready for review.

## II.

## LEGAL STANDARD[3]

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

---

[3] This Section's references to "plaintiff" and "defendant" correspond to Nugent (as counter-plaintiff) and ISC and Roberts (as counter-defendants), respectively.

When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

In their Motion, ISC and Roberts move to dismiss all of Nugent's counterclaims. The Court will examine each claim individually, and then consider whether to grant Nugent leave to amend any deficient claims.

A.   *Nugent's Counterclaims*

   1.   <u>Declaratory Judgment</u>

In her first counterclaim, Nugent seeks a declaration that the statue of limitations has run on any claims Plaintiffs might have against her under the Stored Communications Act (SCA), 18 U.S.C. § 2701 *et seq.* Doc. 15, Def.'s FAC ¶¶ 29–37. In doing so, Nugent also cites to the statutes of limitations for claims under the CFAA and the ECPA. *Id.* ¶ 32. Picking up on this incongruity, Plaintiffs argue that Nugent is simply attempting to block their claims by obtaining a declaration that they are time-barred. Doc. 28, Pls.' Br. in Supp. 4. Nugent insists that her declaratory judgment request does not encompass Plaintiffs' CFAA and ECPA claims at this time, and thus their objection is ill-founded. Doc. 32, Def.'s Resp. ¶ 5.

On its face, Nugent's declaratory judgment request pertains only to potential claims under the SCA. Doc. 15, Def.'s FAC ¶ 30. This only makes her citations to the limitations periods for Plaintiffs' claims even more puzzling. The Court cannot discern—and Nugent has not explained—how the limitations periods for other statutory claims have any bearing on the SCA

claims. In fairness to Nugent, though, the Court will take her representations at face value and assume that she seeks only a declaration as to whether claims under the SCA are barred.[4]

Plaintiffs argue that a declaratory judgment as to whether the SCA's limitations period applies here is "defensive in nature" and would only "forestall any amendment of Plaintiffs' Complaint to assert claims under the [SCA]."[5] Doc. 35, Pls.' Reply 2. "The mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action." *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 397 (5th Cir. 2003). Anticipatory claims like this are subject to dismissal only when they are made for a subversive purpose, such as changing the law to be applied to the parties' dispute. *See id.* (citing *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 & n.3 (5th Cir. 1983)). Where, as here, a party seeks a declaratory judgment to resolve issues not already present in the litigation, such a request is proper. *See Traxxas, L.P. v. Dewitt*, No. 4:14CV733, 2015 WL 7777986, at *6 (E.D. Tex. Dec. 2, 2015). Furthermore, Plaintiffs have not explained how Nugent's declaratory judgment request inhibits them from amending their Complaint to include claims under the SCA. Accordingly, the Court will not dismiss Nugent's declaratory judgment claim at this time.

---

[4] The Court notes in this respect that Plaintiffs' CFAA and ECPA claims already implicate any applicable limitations periods. Therefore, a declaratory judgment request as to those claims would be duplicative of issues already present in the case, and thus subject to dismissal. *See Merritt Hawkins & Assocs., LLC v. Gresham*, No. 3:12-CV-0312, 2014 WL 685557, at *3 (N.D. Tex. Feb. 21, 2014) ("In the Rule 12(b)(6) context, courts generally dismiss declaratory judgment claims seeking to resolve matters already pending before the court.").

[5] Plaintiffs also contend that Nugent's request, as the Court has construed it, is still "duplicative of issues related to Plaintiffs' claims." Doc. 35, Pls.' Reply 2. As the Court has already noted, it does not understand how the limitations period for one statute bears on claims asserted under different statutes. Without further elaboration by Plaintiffs, the Court rejects this argument.

2. *Sabine Pilot* Wrongful Discharge

Nugent's second counterclaim is for wrongful discharge under *Sabine Pilot Service, Inc. v. Hauck*. In *Sabine Pilot*, the Texas Supreme Court recognized "a very narrow exception to the employment-at-will doctrine . . . . cover[ing] only the discharge of an employee for the sole reason that the employee refused to perform an illegal act." 687 S.W.2d at 735. Here, Nugent alleges that ISC fired her because she refused to "substantiate the false testimony Roberts perpetuated." Doc. 15, Def.'s FAC ¶ 40. That is, she refrained from perjuring herself and "provided testimony that was harmful to Roberts and ISC" at the April 2013 injunction hearing. *Id.* ¶ 18. As a result, she says, Plaintiffs denied her any access to ISC's computer systems and eventually fired her. *Id.* ¶¶ 19, 22.

Plaintiffs argue that Nugent has failed to state a claim for wrongful discharge because she has not alleged that anyone at ISC ever directed her to perjure herself. Doc. 28, Pls.' Br. in Supp. 5–6. To prevail on a *Sabine Pilot* claim, a plaintiff must show: "(1) she was required to commit an illegal act which carries criminal penalties; (2) she refused to engage in the illegality; (3) she was discharged; [and] (4) the sole reason for her discharge was her refusal to commit an unlawful act." *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003). The first element requires proof that "the employer required, not just requested, the employee to commit unlawful acts." *Id.* at 677 (citing *Burt v. City of Burkburnett*, 800 S.W.2d 625, 626–27 (Tex. App.—Fort Worth 1990, writ denied)); *see also Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332 (Tex. 2006) (reversing a judgment in favor of terminated employee where there was no evidence that employee "was *asked* to participate in any impending criminal acts" (emphasis added)).

Nugent has not alleged that Roberts or anyone else required her to testify falsely or lose her job. While she contends that Roberts intimidated her to coerce her cooperation, she does not explain

what this intimidation entailed. She offers only the following facts in support: (1) Roberts's lawyer told her that she had to attend Roberts's deposition, and (2) Roberts sent her texts during her deposition, one of which asked her not to leave until she and Roberts had talked.[6] Doc. 15, Def.'s FAC ¶¶ 16–17. Absent, however, is any allegation that Roberts instructed her to perjure herself. Although Nugent states that she "had a good faith belief that she was being requested to perform" a criminal act, *id.* ¶ 44, an employee's "subjective interpretation of her supervisor's remarks," without some "direction to commit the unlawful act[]," cannot sustain a *Sabine Pilot* claim. *White*, 319 F.3d at 677. Thus, she has failed to state a claim for wrongful discharge.[7]

### 3.  Intentional Infliction of Emotional Distress

Nugent's third counterclaim is for intentional infliction of emotional distress (IIED), based on her termination and this lawsuit. Doc. 15, Def.'s FAC ¶¶ 48–49. Plaintiffs seek dismissal of this claim, arguing that, as a matter of law, filing a lawsuit and firing an employee cannot form the basis of an IIED claim. Doc. 28, Pls.' Br. in Supp. 7–9.

To state a claim for IIED, a plaintiff must allege (1) the defendants acted intentionally or recklessly; (2) their conduct was extreme and outrageous; (3) their actions caused the plaintiff's

---

[6] In her Response, Nugent argues that she pleaded that "Roberts sent her SMS text messages to testify contrary to the facts and consistent with [his] perjury." Doc. 32, Def.'s Resp. ¶ 8. No such allegation appears in her pleading. At most, she has alleged that Roberts sent her text messages during her deposition, and that one of them read, "Don't leave before we talk." Doc. 15, Def.'s FAC ¶ 17.

[7] Nugent argues that, because the Texas Supreme Court decided *D'Unger* on the basis that there was no evidence that the employer had required the employee to commit an illegal act, dismissal at this stage is inappropriate. Doc. 32, Def.'s Resp. ¶ 8. But that case does not hold that a court cannot dismiss a *Sabine Pilot* claim for failure to state a claim, and Nugent has provided no authority for such a proposition. Without an allegation that Roberts required her to commit an illegal act, there is no factual basis for the Court to conclude that he did so. As a result, ISC's liability is merely possible, rather than plausible. *See Iqbal*, 556 U.S. at 678.

emotional distress; and (4) the emotional distress was severe. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). "A defendant's conduct satisfies the second element only if it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). "It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous." *Hoffmann-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).

The Texas Supreme Court has held that "the mere fact of termination of employment, even if the termination is wrongful, is not legally sufficient evidence that the employer's conduct was extreme and outrageous." *Sw. Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex. 1998), *abrogated on other grounds by Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 656 n.27 (Tex. 2009). Even if an employer has a "retaliatory motive[]" in terminating an employee, this conduct is not extreme and outrageous as a matter of law. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex. 1999). The same goes for a lawsuit—even filing a meritless lawsuit is not considered extreme and outrageous as a matter of law. *Klein & Assocs. Political Relations v. Port Arthur Indep. Sch. Dist.*, 92 S.W.3d 889, 898 (Tex. App.—Beaumont 2002, pet. denied). Here, Nugent has not even alleged that Plaintiffs' suit lacks merit. There is no IIED liability where a party "has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Motsenbocker v. Potts*, 863 S.W.2d 126, 132 (Tex. App.—Dallas 1993, no writ) (quoting Restatement (Second) of Torts § 46 cmt. g (1965)); *see also Wornick Co. v. Casas*, 856 S.W.2d 732, 735 (Tex. 1993) ("[N]o liability for intentional infliction of emotional distress where an actor does no more than insist on its legal rights." (citing *Reid v. Sears*,

*Roebuck & Co.*, 790 F.2d 453, 462 (6th Cir. 1986))). Filing a lawsuit, especially one whose legal merit is not contested, is a permissible way to insist upon one's legal rights. Accordingly, Nugent's IIED claim fails as well.

4. Attorney's Fees

Nugent has also counterclaimed for attorney's fees. Under the American Rule, "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, ___ U.S. ___, 135 S. Ct. 2158, 2164 (2015). Nugent has not identified any contractual basis for attorney's fees, so she must point to a statute to sustain her claim. Originally, Nugent relied upon Texas's Uniform Declaratory Judgments Act (UDJA), Tex. Civ. Prac. & Rem. Code § 37.001 *et seq. See* Doc. 15, Def.'s FAC ¶¶ 50–51 (citing Tex. Civ. Prac. & Rem. Code § 37.009). As Plaintiffs point out, though, the UDJA is procedural, and thus does not apply in federal proceedings. *See Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998). Consequently, the Court cannot award attorney's fees under the UDJA.

In her Response, Nugent changes tack and asserts that she "intends to seek prevailing party attorney['s] fees under [Federal Rule of Civil Procedure] 54." Doc. 32, Def.'s Resp. ¶¶ 12–13 (emphasis omitted). Rule 54, however, merely provides a mechanism by which to seek attorney's fees; it is not a stand-alone basis for awarding such fees. *See* Fed. R. Civ. P. 54(d)(2). Nugent has suggested no other statute that might support her claim. Absent a valid statutory provision authorizing an award of attorney's fees, Nugent's claim must be dismissed.

5. Anti-SLAPP Remedies

In her final counterclaim, Nugent "reserves her right to request and enforce remedies under Tex. Civ. Prac. & Rem. Code § 27.001 *et seq.*" Doc. 15, Def.'s FAC ¶ 52. These provisions comprise

the Texas Citizen's Participation Act (TCPA), which operates "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002. Plaintiffs object that "[t]here is no authority . . . to support applying [the] Texas Anti-SLAPP statute to dismiss claims arising under federal law." Doc. 28, Pls.' Br. in Supp. 9–10. As explained below, the Court agrees.

The Fifth Circuit has not yet decided whether state Anti-SLAPP laws apply in federal proceedings. *Culbertson v. Lykos*, 790 F.3d 608, 631 (5th Cir. 2015). In deciding whether the TCPA applies here, the Court engages in a two-step inquiry: first, it must decide whether a federal rule "answers the question in dispute"; then, if the federal rule does answer that question, it applies unless "it exceeds statutory authorization or Congress's rulemaking power." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

Nugent has not identified which TCPA remedies she is reserving her right to enforce, but the only remedies the Act provides are dismissal and associated monetary awards.[8] *See* Tex. Civ. Prac. & Rem. Code §§ 27.003, .009. The TCPA thus answers the question of when a party's claims are subject to pre-trial dismissal. As the United States Court of Appeals for the District of Columbia Circuit recently found, Federal Rules of Civil Procedure 12 and 56 answer the same question. *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333–36 (D.C. Cir. 2015). Furthermore, those rules do

---

[8] A party moving to dismiss a claim under the TCPA is also entitled to a discovery stay. Tex. Civ. Prac. & Rem. Code § 27.003(c). The magistrate judge in this case has already ruled that Nugent may not avail herself of this remedy, however, so the Court will not address it. Doc. 34, Order.

not exceed Congress's rulemaking power. *Id.* at 1336–37. The Court finds the D.C. Circuit's reasoning persuasive, and so concludes that Plaintiffs' claims are not subject to the TCPA.

B.      *Leave to Amend*

Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears that the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (stating that "a court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted" (internal alterations omitted)).

Here, Nugent's *Sabine Pilot* and attorney's fees claims have simply been deficiently pled. The Court therefore grants her leave to amend those claims if she can do so in a way that overcomes the shortcomings that the Court has identified. But the defects in her IIED and Anti-SLAPP claims are more fundamental. Specifically, Nugent cites actions that cannot serve as the basis for an IIED claim as a matter of law, and the TCPA does not apply to federal lawsuits. Therefore, the Court will not grant Nugent leave to amend those claims, since amendment would be futile. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000).

## IV.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiffs' Motion to Dismiss Amended Counterclaim (Doc. 28) with respect to Nugent's *Sabine Pilot*, IIED, attorney's fees, and Anti-SLAPP counterclaims, and **DENIES** it with respect to Nugent's declaratory judgment counterclaim. The Court also **GRANTS** Nugent **leave to amend** her *Sabine Pilot* and attorney's fees counterclaims by no later than **June 23, 2016**.

**SO ORDERED.**

**SIGNED: May 23, 2016.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE