UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INSURANCE SAFETY CONSULTANTS LLC and CHRISTOPHER ROBERTS, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:15-CV-2183-B |
| CARRIE D. NUGENT, | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Combined Rule 12 Filing: (1) Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint; (2) Motion to Abstain Under *Colorado River* Doctrine; and (3) Alternative Motion to Transfer and Abate Under *Forum Non Conveniens* Doctrine. Doc. 58 [hereinafter Def.'s Combined Mot.]. For the following reasons, the Court **GRANTS in part and DENIES in part** Defendant's tripartite Motion.

## I.

## BACKGROUND

This case has its origin in a business dispute between Plaintiff Christopher Roberts and an individual named Kevin West. Roberts and West used to co-own a company called Safety and Environmental Solutions, LLC (SES). Doc. 57, Pls.' First Am. Compl. ¶¶ 7–8 [hereinafter FAC]. After a disagreement about SES's ownership, Roberts left the company in January 2013 to form Plaintiff Insurance Safety Consultants LLC (ISC). *Id.* ¶ 9. West and SES then sued Roberts and ISC in state court (the SES Suit). *Id.* ¶ 10.

About a month later, ISC hired Defendant Carri D. Nugent.[1] *Id.* ¶¶ 7, 9. One of her responsibilities at ISC was to set up email accounts for the company's employees, including Roberts. *Id.* ¶ 16. While setting up Roberts's email, Nugent "configured an email application . . . on her personal laptop to allow her to access . . . Roberts'[s] email." *Id.* ¶ 17. Roberts and ISC say she was not authorized to do this; she disagrees. *Id.*; Doc. 59, Def.'s Br. Supp. Def.'s Combined Mot. ¶ 53 [hereinafter Def.'s Br.]. Either way, all parties agree that Nugent had access to Roberts's email during her employment. Doc. 57, FAC ¶ 17; Doc. 59, Def.'s Br. ¶ 53.

After ISC hired Nugent, West and SES added her as a defendant in the SES Suit and deposed her in March 2013. Doc. 57, FAC ¶¶ 10–11. But at a temporary injunction hearing the next month, Nugent recanted some of her deposition testimony. *Id.* ¶ 13. Plaintiffs allege that Nugent admitted to testifying falsely; Nugent, by contrast, appears to concede only that her deposition testimony was inaccurate. *See* Doc. 48, Mem. Op. & Order, 2 n.2. In any event, ISC fired her shortly after and she returned to SES.[2] Doc. 57, FAC ¶ 14. Back at SES, Nugent continued to access Roberts's email and, according to Plaintiffs, passed along the information she retrieved to West. *Id.* ¶¶ 18–19. When Plaintiffs learned what she was doing, they filed this lawsuit. *See* Doc. 1, Compl.

In response, Nugent filed counterclaims against Roberts and ISC. Doc. 15, Def.'s First Am. Counter-Claims ¶¶ 29–52. They twice moved to dismiss her counterclaims and a protracted fight on that point ensued. *See* Docs. 48, Mem. Op. & Order; 100, Order. The Court eventually dismissed

---

[1] Nugent was apparently misnamed as "Carrie D. Nugent" in the Complaint. *See* Doc. 10, Def.'s Answer ¶ 3. Plaintiffs' FAC does the same.

[2] Nugent's "return" to SES is somewhat unclear. Plaintiffs allege that Nugent "accepted an offer to return to work for SES" after they fired her yet make no mention of her having worked for SES at any point before. *See* Doc. 57, FAC ¶ 14. The Court takes as true Plaintiffs' allegations here but, with that ambiguity in mind, wishes to clarify that Nugent's prior employment plays no part in its analysis.

most of Nugent's counterclaims but then granted her leave to amend. *See* Doc. 48, Mem. Op. & Order 12. Accordingly, she filed her Second Amended Counter-Claim (Doc. 49), which is still pending. *See* Doc. 100, Order.

While waiting on the Court's decision on their second motion to dismiss—and with leave of Court—Plaintiffs filed their FAC, alleging that Nugent violated the: (1) Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*; and (3) Stored Communications Act, 18 U.S.C. § 2701 *et seq.* Doc. 57, FAC ¶¶ 21–39. Nugent, in turn, filed the Combined Motion that the Court addresses here. *See* 58, Def.'s Combined Mot. To recap, Nugent alternatively asks the Court to: (1) abstain from exercising jurisdiction on the case under the *Colorado River* doctrine; (2) transfer the case under the *forum non conveniens* doctrine; or (3) dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). *Id.* Plaintiffs responded. *See* Doc. 66, Pls.' Resp. to Def.'s Combined Mot. [hereinafter Pls.' Resp.]. And Nugent replied.[3] Doc. 68, Def.'s Reply to Pls.' Resp. [hereinafter Def.'s Reply]. Thus, Nugent's Combined Motion is ready for review.

## II.

## LEGAL STANDARDS

A.    *Colorado River Doctrine*

Under the *Colorado River* doctrine, a federal district court has discretion to abstain from

---

[3]Nugent also filed an appendix in support of her Reply. Doc. 68-1. Yet she did so without leave of court in violation of the Northern District of Texas's local rules. *See* N.D. Tex. Civ. R. 56.5(c); 56.7; *see also Barrack v. UNUM Am. Life Ins. Co.*, 409 F. Supp. 2d 782, 785 (N.D. Tex. 2006) (applying Local Rule 56 to motion to dismiss). So the Court **STRIKES** Nugent's reply appendix (Doc. 68-1). *See Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 103–04 (N.D. Tex. 2001) (striking reply appendix filed "without first obtaining leave of court").

exercising jurisdiction where there is a "parallel state court proceeding" and "exceptional circumstances" exist that would permit a district court to decline exercising jurisdiction. *See Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006); *Murphy v. Uncle Ben's Inc.*, 168 F.3d 734, 737–38 (5th Cir. 1999). A state court proceeding is parallel "where the two suits involve the same parties and the same issues." *Am. Guar. & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251 (5th Cir. 2005). "If the suits are not parallel, [then] the federal court must exercise jurisdiction." *Stewart*, 438 F.3d at 491 n.3 (citing *RepublicBank Dallas, N.A. v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987)).

But if they are parallel, then the court must determine whether "extraordinary circumstances" are present that merit abstention. The Supreme Court has set forth six factors that may be considered: "(1) assumption by either court of jurisdiction over a res; (2) the relative inconvenience of the forums; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state court proceedings in protecting the rights of the party invoking federal jurisdiction." *Murphy*, 168 F.3d at 738 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 285–86 (1995)).

B.    *Forum Non Conveniens*

Under the doctrine of *forum non conveniens*, a federal court may dismiss a case, even if jurisdiction and proper venue are established, "'when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Int'l Co. v.*

*Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (internal alterations omitted) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48 (1994)). Yet "since the advent of 28 U.S.C. § 1404, which permits a federal district court to transfer a case to an alternative federal district court based upon the convenience of the parties, *forum non conveniens* is rarely applicable in federal courts; it is largely limited cases where the alternative forum for litigating the dispute is outside of the United States." *Beck v. Progressive Adv. Ins. Co.*, No. 5:14-cv-24, 2014 WL 1479873, at *4 (N.D. W. Va. Apr. 15, 2014) (internal quotation marks and citations omitted); *see also* 14D Charles Alan Wright et al., Federal Practice & Procedure § 3828.

With that in mind, "[a] defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*, Nos. 2:14-cv-911-JRG-RSP; 2:14-cv-912, 2015 WL 5786501, at *2 (E.D. Tex. Sept. 30, 2015) (citing *Sinochem*, 549 U.S. at 430). To meet that burden, a defendant must demonstrate that: (1) a viable alternative forum exists; and (2) the balance of a series of public and private interest factors favors trial in the alternative forum. *See id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

The private interest factors are:

> (i) the relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of the premises, if view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007) (citing *Gulf Oil*, 330 U.S. at 508; *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1162 (5th Cir. 1987) (en banc)). The public interest factors are:

> (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law of application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* (citing *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir. 1999); *In re Air Crash*, 821 F.2d at 1162–63).

C.    *Federal Rule of Civil Procedure 12(b)(6)*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

As referenced, Nugent's Combined Motion alternatively requests three forms of relief. The Court considers each request in turn.

A.     *Colorado River Doctrine*

Nugent argues that a dismissal or stay of this action is appropriate under the *Colorado River* doctrine, which allows a federal court to abstain from exercising jurisdiction over cases involving both a parallel state court proceeding and exceptional circumstances. Doc. 59, Def.'s Br. ¶¶ 27–34.

"The *Colorado River* abstention doctrine is based on principles of federalism, comity, and conservation of judicial resources. It represents an 'extraordinary and narrow exception' to the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them.'" *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976)). And the first step in deciding whether it applies is determining whether a parallel state court proceeding exists.

Nugent contends that the SES suit is a parallel proceeding because it is "based on exactly the same conduct transaction or occurrence as" Plaintiffs' claims here. Doc. 59, Def.'s Br. ¶ 23. Plaintiffs, Nugent says, raise the same substantive issues here as they do in the SES suit. *Id.* ¶¶ 4, 28. What's more, Nugent's *Sabine Pilot* counterclaim is also pending in state court. *Id.* ¶ 31. As a result, Nugent concludes, the SES suit "is inextricably intertwined with this matter and the Court should abstain

from maintaining it on its docket or abate the matter or otherwise transfer the case" to state court.

*Id.* ¶ 26. Plaintiffs counter that the SES suit is not parallel because it does not involve the same parties and claims. Doc. 66, Pls.' Resp. 12. As Plaintiffs explain in their briefing:

> The [SES suit] primarily involves claims between Kevin West and Chris Roberts and ISC. Kevin West, not Chris Roberts, asserted claims briefly against Ms. Nugent in that litigation. Ms. Nugent was non-suited from that lawsuit in April of 2013. It was not until after this lawsuit was filed that Ms. Nugent intervened in the [SES suit] and asserted claims against Christopher Roberts. Those claims related to her allegedly improper termination by ISC. Plaintiffs in this lawsuit have no pending claims against Ms. Nugent in the [SES suit]. While it is true that Plaintiffs asserted claims against SES related, in part, to Ms. Nugent's conduct as an employee of SES, summary judgment was granted on those claims.

*Id.* In other words, Plaintiffs do not and have not had claims against Nugent pending in state court.

The Court concludes that the SES suit is not a parallel proceeding for the purposes of the *Colorado River* doctrine. Proceedings are parallel "where the two suits involve the same parties and the same issues." *Am. Guar.*, 408 F.3d at 250. The parties and issues need not be identical, but at a minimum there must be a substantial likelihood the SES suit "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). In other words, "the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Id.* And that's not the case here—Plaintiffs' claims against Nugent are before this Court alone. So regardless of the SES suit's outcome, there will remain substantive work for the Court to do.

To be sure, this case is tangled with the SES suit. As Nugent notes, some declaratory judgment claims in the SES suit could impact Plaintiffs' claims here. Doc. 59, Def.'s Br. ¶ 31. But mere entanglement is not enough. *See RepublicBank Dallas*, 828 F.2d at 1121 ("Even in the instance

of truly parallel cases, one pending in state and the other in federal court, current Supreme Court authority indicates that 'only the clearest of justifications' will warrant the federal court's staying its hand."). To the extent that entanglement presents concerns over inconsistency, "the problem of inconsistent judgment can be obviated through a plea of *res judicata* should one court render judgment before the other." *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 498 (5th Cir. 2002).

And so with all of that in mind, the Court **DENIES** Nugent's request to abstain from exercising its jurisdiction over this case under the *Colorado River Doctrine*. *See Stewart*, 438 F.3d at 491 n.3 ("If the suits are not parallel, [then] the federal court must exercise jurisdiction.").

B.     *Forum Non Conveniens*

Nugent next asks the Court to "transfer" this case to state court under the *forum non conveniens* doctrine. *See* Doc. 59, Def.'s Br. ¶ 38. The Court refuses for a few reasons.

For starters, Nugent's request for relief conflates the doctrine of *forum non conveniens* with a general motion to transfer. As mentioned above, the "transfer of venue function of the *forum non conveniens* doctrine has been superseded by statute." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996) (citing 28 U.S.C. § 1404(a)). That left two mutually exclusive paths. *See* 14D Charles Alan Wright et al., Federal Practice & Procedure § 3828. If a defendant wishes for its case to be heard in front of another federal court, then it may move to *transfer* the case there under § 1404. *See Sinochem*, 549 U.S. 429–30. But if the defendant prefers an altogether different forum, then it should move to *dismiss* the case under the *forum non conveniens* doctrine. *Id.* Nugent took neither of those paths and instead split the difference, requesting that the Court *transfer* this case to Texas state court under the *forum non conveniens* doctrine. Doc. 59, Def.'s Br. ¶ 38. For that reason alone, the second

request in her Combined Motion ought to be denied *See Sinochem*, 549 U.S. 429–30. Nevertheless, the Court will consider the merits of her argument.

"[T]he abstention doctrines and the doctrine of *forum non conveniens* proceed from a similar premise: In rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Quackenbush*, 517 U.S. at 722. When that forum is a state court, relinquishment is doubly-rare: "The common-law doctrine of *forum non conveniens* has continuing application in federal courts only in cases where the alternative forum is abroad and *perhaps* in rare instances where a state or territorial court serves litigational convenience best." *Sinochem*, 549 U.S. at 430 (emphasis added) (citations omitted). "*Sinochem*, however, does not explain what these 'rare instances' are." *Waste Mgmt. of La., L.L.C. v. Jefferson Parish*, 48 F. Supp. 3d 894, 906 (E.D. La. 2014). More importantly, neither does Nugent despite bearing the burden to do so.[4] *See Sinochem*, 549 U.S. at 430. The Court has an idea why. *See Waste Mgmt.*, 48 F. Supp. at 906 n.110 ("The Court has not located any case explaining the 'rare instances' referenced in *Sinochem*.").

Instead, Nugent skates right to the weighing of public and private interest factors, the balance of which she insists favors transfer. Doc. 59, Def.'s Br. ¶¶ 35–38. Yet here too, she supports her position with conclusory statements rather than citations to authority. Plaintiffs, for their part, disagree and note that they do not assert any claims against Nugent in the SES suit. Doc. 66, Pls.' Resp. 14. And so, Plaintiffs say, the Court should deny Nugent's request for relief under the *forum non conveniens* doctrine for much the same reasons as under *Colorado River. Id.* at 14–15.

The Court is no stranger to the doctrine of *forum non conveniens. See, e.g., Sgic Strat. Glob. Inv.*

---

[4]Indeed, Nugent just offers the bald statement that "[t]his case *is* the rare instance where the state court serves litigational convenience best." Doc. 68, Def.'s Reply ¶ 19.

*Cap., Inc. v. Burger King Europe, GmbH*, No. 3:14-cv-3300-B, 2015 WL 12731761 (N.D. Tex. Aug. 26, 2015). But Nugent "invokes this familiar doctrine in an unusual context." *Kettenbach v. Demoulas*, 822 F. Supp. 43, 45 (D. Mass. 1993). While it "typically applies where the alternative forum is in a foreign country or at least some great distance from the federal forum, here the alternative forum is a state court located within a few miles of the federal courthouse." *Id.*; *see also Henderson v. FLOORgraphics, Inc.*, 153 F. Supp. 2d 133, 136–37 (D. Conn. 2001). And considered from that perspective, Nugent's argument that the balance of public and private interest factors favors dismissal comes up short. The operative facts here are analogous to those in *Kettenbach*, and the Court finds its analysis persuasive:[5]

> In this case, the balance of public and private interests do not outweigh the plaintiffs' choice of forum. The alternative forum advanced by the defendant is only a few miles from the federal courthouse and would have no effect on the parties' ease of access to sources of proof, the availability of compulsory process, the costs of obtaining witnesses or the enforceability of judgment. In addition, this federal forum is located in the home state of all the parties and at the situs of the alleged wrongdoing. The citizens of this state will have both the duty and opportunity to decide this localized controversy, regardless of whether it is tried in state or federal court. This case simply does not raise the kind of problems addressed by forum non conveniens. *Augustin v. Mughal*, 521 F.2d 1215, 1217 (8th Cir.1975) (finding no evidence that the state court would provide a substantially more convenient forum for adjudication of the complaint even though the parties were involved in a state-court lawsuit arising from the same accident). Plaintiffs' choice of a federal forum in Massachusetts was reasonable and will not be disturbed. Forum non conveniens cannot be used as a tool to substitute defendant's choice of forum for the appropriate, but perhaps somewhat less desirable, forum already selected by the plaintiff. Nor should the doctrine be used merely to shift the burden of inconvenience from the defendant to the plaintiff. *Cf.*

---

[5]The Court recognizes that the *Kettenbach* court distinguished its analysis from another district court "that dismissed a federal action on *forum non conveniens* grounds because a similar action, *involving the same parties*, was pending in state court" and the court worried that "it lacked diversity jurisdiction over the dispute." 822 F. Supp. at 46. The Court further realizes that the SES is pending in state court. Yet *Kettenbach*'s analysis is still on point. The Court has no doubts as to its jurisdiction over this case and Plaintiffs chose *this* Court as their forum.

> *Norman v. Brown, Todd & Heyburn*, 693 F. Supp. 1259, 1261 (D. Mass.1988) (denying
> motion to transfer under 28 U.S.C. 1404(a)).

*Kettenbach*, 822 F. Supp. at 46.

To be sure, some situation fits the bill as a "rare instance[] where a state or territorial court serves litigational convenience best"—otherwise the Supreme Court would not have left open the possibility. *See Sinochem*, 549 U.S. at 430. But this is not that instance. So the Court **DENIES** Nugent's request for transfer under the *forum non conveniens* doctrine.

C.      *Federal Rule of Civil Procedure 12(b)(6)*

As mentioned above, Plaintiffs' FAC asserts causes of action against Nugent for violations of the: (1) Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*; and (3) Stored Communications Act, 18 U.S.C. § 2701 *et seq.* Doc. 57, FAC ¶¶ 21–39. Nugent asks the Court to dismiss all three for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 59, Def.'s Br. ¶¶ 39–40. The Court considers each claim separately.

1.      Computer Fraud and Abuse Act (CFAA)

Plaintiff claims that Nugent, "by accessing and transmitting Plaintiffs' email communications on the computers of Plaintiffs," accessed protected computers in violation of § 1030(a)(2)(C) of the CFAA. Doc. 57, FAC ¶ 22. That section provides, in pertinent part, that:

> Whoever . . . intentionally accesses a computer without authorization or exceeds
> authorized access, and thereby obtains . . . information from any protected computer
> . . . shall be punished as provided in subsection (c) of this section.

18 U.S.C. § 1030(a)(2)(C). A "protected computer" in this context is one that is "used in or affecting interstate or foreign commerce or communication." *Id.* § 1030(e)(2)(B).

"The CFAA is primarily a criminal statute that proscribes fraud and related activity in connection with computers." *Southwest Airlines Co. Harris*, No. 3:07-cv-0583-D, 2007 WL 3285616, at *2 (N.D. Tex. Nov. 2, 2007).[6] Yet subsection (g) of the CFAA "authorizes 'any person who suffers damage or loss by reason of a violation of this section' to file a civil action for compensatory damages, injunctive relief and/or other equitable relief against persons whose conduct involves factors described in" subsection (c)(4)(A)(I). *Id.* (quoting 18 U.S.C. § 1030(g)). Subsection (g) goes on to clarify that:

> [a] civil action for violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

18 U.S.C. § 1030(g). Subsection (c)(4)(A)(i) sets out a number of possible factors. The only one potentially present in this case is "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." *Id.* § 1030(c)(4)(A)(i)(I); Doc. 57, FAC ¶ 26; *see also Donahue v. Tokyo Elec. Am., Inc.*, No. A-14-CA-563-SS, 2014 WL 12479285, at *10 (W.D. Tex. Sept. 2, 2014).

In sum, then, Plaintiffs must allege enough facts to plausibly show that: (1) Nugent obtained information from a protected computer by either intentionally accessing the computer without authorization or intentionally exceeding her authorized access; and (2) Nugent's improper access caused loss to one or more persons during any one-year period aggregating at least $5,000. *See* 18

---

[6]The Court notes that the CFAA has received minor updates since this case was published. *See, e.g.,* *Southwestern Bell Tel. Co. v. Iverson*, No. 3-11-cv-2009-O-BD, 2012 WL 652040, at *1 n.2 (N.D. Tex. Feb. 6, 2012).

U.S.C. §§ 1030(a)(2)(c), (c)(4)(A)(i)(I). What's more, Plaintiffs must have brought their claim within two years of Nugent's actions or discovering Nugent's actions, whichever was earlier. *Id.* § 1030(g). Nugent claims that Plaintiffs' FAC fell short in all three respects.

First, Nugent argues that whatever she allegedly did was done on her own laptop. Doc. 59, Def.'s Br. ¶¶ 56–60. With that in mind, she continues, Plaintiffs failed to allege that her laptop was involved in interstate or foreign commerce or communication—and even if it were, her access would necessarily be authorized because it was her own computer. *Id.* The Court finds Nugent's logic on those points wanting.

For starters, and as Plaintiffs point out in their Response, the computer at issue is neither Nugent's personal laptop nor Plaintiffs' personal computers but the server that they access. *See* Doc. 66, Pls.' Resp. 6. Nugent disputes that in her Reply, claiming that Plaintiffs' FAC did not allege that she accessed a third-party server. Doc. 68, Def.'s Reply ¶ 24. Yet Plaintiff's FAC alleges that "ISC's email was hosted with Microsoft Corporation, through its Office 365 email service." Doc. 57, FAC ¶ 16. So if the Court takes as true, which it must, Plaintiffs' claims that Nugent accessed Plaintiffs' emails, then she necessarily accessed Microsoft's servers via an internet connection. *See Heil Trailer Int'l, Co. v. Kula*, No. 4:12-cv-385-Y, 2012 WL 12877645, at *1 (N.D. Tex. Aug. 21, 2012) ("If a computer system is connected to the internet, it qualifies as a protected computer under the CFAA because an internet connection is part of an interstate communication system.").

What's more, Plaintiffs assert that Nugent "configured an email application, Microsoft Outlook[,] on her personal laptop to allow her to access Chris Roberts'[s] email . . . without Roberts'[s] or ISC's authorization." Doc. 57, FAC ¶ 17. Together, these averments are enough to plausibly allege that Nugent unauthorizedly accessed a protected computer in violation of the CFAA.

- 14 -

Nugent next argues that Plaintiffs' claims for damages are conclusory. Doc. 59, Def.'s Br.

¶ 41. Plaintiffs do not much respond here. *See* Doc. 66, Pls.' Resp. 6–7. The Court concludes that

they should have because their FAC was deficient on that point. In particular, it asserts that:

> 20.    Plaintiffs have incurred significant damages as a result of Defendant Nugent's unauthorized access of its owner, Chris Robert[s]'s emails. Plaintiffs have paid significant amounts of money to computer experts to examine ISC's computers to discover the extent of Defendant Nugent's unauthorized access and has incurred significant additional legal bills in the ISC/SES litigation as a result of Defendant's actions. ISC has also lost business from its customers as a result of Defendant's actions. *Plaintiffs damages exceed $5,000 during a one year period.*
>
> . . .
>
> 26.    *Plaintiff has incurred damage and loss exceeding $5,000 during a one year period.* Plaintiffs seek recovery for this loss, as well as injunctive relief, to prevent future harm.

Doc. 57, FAC ¶¶ 20, 26 (emphasis added). Those statements lack any factual underpinnings that

would allow the Court to infer $5,000 in damages, let alone $5,000 in damages over a one-year

period. Instead, Plaintiffs list off a number of hardships that they have purportedly suffered as a result

of Nugent's actions and then ask the Court to trust their unsupported conclusion that those

hardships resulted in enough damages to state a claim under the CFAA. Plaintiffs needed to show

more—Rule 12(b)(6) does not permit the Court to take that leap of faith.

That alone is sufficient to dismiss Plaintiffs' CFAA claim. Yet Nugent raises another point

that the Court must address. In particular, Nugent asserts that all three of Plaintiffs' claims, including

their CFAA claim, are time barred because Plaintiffs initiated an investigation into Nugent's access

to their emails on May 22, 2013. Doc. 59, ¶¶ 42–45. In support, Nugent offers Plaintiffs' initial

disclosure under Federal Rule of Civil Procedure 26(a)(1). *Id.*; See Doc. 59-1, Def.'s Resp. App., Ex.

L., Pls.' Rule 26(a)(1) Disclosures.

That investigation, Nugent claims, demonstrated inquiry notice and triggered the two-year limitations period. Doc. 59, ¶¶ 42–45. Plaintiffs filed suit on June 29, 2015. Thus, their claims are time-barred. *Id.*

Plaintiffs, for their part, note that Nugent failed to show that they were aware that she was illegally accessing their email server. Doc. 66, Pls.' Resp. 10. And even if they had been, Plaintiffs' FAC alleged that Nugent kept intercepting and forwarding emails until May 2014. *Id.* Each of those instances violated the CFAA, therefore Plaintiffs' claims are timely. *Id.* But more importantly, Plaintiffs conclude, this is a fact-intensive issue that calls for more discovery. *Id.* Thus, dismissal on limitations grounds at this point would be premature. *Id.* The Court agrees.

As an initial matter, Nugent moved to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). That means the Court may consider only the pleadings, documents attached to the pleadings, and matters of public record in deciding Nugent's motion. *See* Fed. R. Civ. P. 12(b)(6); *Coleman v. Bank of N.Y. Mellon*, 969 F. Supp. 2d 736, 747 (N.D. Tex. 2013). Yet Nugent's whole position stems from Plaintiffs' initial disclosures. And despite Nugent's contention otherwise, those discovery responses are neither referenced in Plaintiffs' FAC nor matters of public record.[7] The Court therefore refuses to consider them here. *See Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573, 578 (N.D. Tex. 2005).

---

[7]Nugent argues that the following sentence from Plaintiffs' FAC somehow provides enough reference to their initial disclosures to shoehorn them in for consideration under Rule 12(b)(6): "Plaintiffs have paid significant amounts of money to experts to examine ISC's computers to discover the extent of Defendant Nugent's unauthorized access and has incurred significant additional legal bills in the ISC/SES litigation as a result of Defendant's action." Doc. 59, Def.'s Br. ¶ 42 (quoting Doc. 57, Pls.' FAC ¶ 20). The Court is unpersuaded. Plaintiffs FAC does not mention or attach Plaintiffs' initial disclosures. Nor are Plaintiffs' initial disclosures otherwise part of the public record. *See Seattle Times v. Rhinehart*, 467 U.S. 20, 33 (1984) (explaining that discovery responses are not "public components of a civil trial"). Thus, they are not part of the pleadings.

Turning to the substance of Nugent's argument, "the statute of limitations is an affirmative defense, and the burden of proof is on the party pleading it." *Chartis Spec. Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 670 (W.D. Tex. 2013). With that in mind, "[a]t the motion to dismiss phase, a complaint should not be dismissed on the basis of statute of limitations unless the complaint affirmatively demonstrates that the plaintiff's claims are time-barred." *Id.* (citing *Frame v. City of Arlington*, 657 F.3d 215, 239 (5th Cir. 2011)).

As explained above, Nugent has offered no proper evidence in support of her limitations argument. But even if the Court were to overlook that shortcoming, her effort would still fall flat. Nugent says that Plaintiffs' notice accrued as soon as they started investigating questionable access to their emails. In essence, Nugent asks the Court to hold Plaintiffs accountable for the results of their investigation on the day it began. That would make no sense.

But more to the point, this is a question of notice accrual, which "is a fact-intensive inquiry. The Court thus concludes that this is an issue best resolved through discovery and summary judgment or trial." *Chartis*, 930 F. Supp. 2d at 670–71. That is true across the board. Thus, to the extent that Nugent intended her argument to apply to any other of Plaintiffs' claims, the Court disagrees for the same reasons set out here.

So Plaintiffs' CFAA claim is not time-barred as pled. It is, however, deficient in another respect: Plaintiffs failed to allege enough facts as to damages to make their claim plausible. For that reason, the Court **DISMISSES** it **without prejudice**.

   2.   Electronic Communications and Privacy Act (ECPA)

Plaintiffs allege that Nugent violated the ECPA by both intentionally intercepting wire or electronic communications from their computers and then intentionally using those intercepted

- 17 -

communications for her own profit despite knowing it was obtained unlawfully. *See* Doc. 57, FAC ¶ 27–31. Nugent counters that her access to Plaintiffs' emails did not constitute an "intercept" under the ECPA and, even if it did, that she did not know that her actions were unlawful. Doc. 59, Def.'s Br. ¶¶ 46–50.

"Section 2520 of the Federal Wiretap Act, as amended by Title I of the [ECPA], provides that 'any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter' may recover civil damages for such violation." *Healix Infusion Therapy, Inc. v. Helix Health, LLC*, 747 F. Supp. 2d 730, 742 (S.D. Tex. 2010) (quoting 18 U.S.C. § 2520)). Civil damages are also available when a person "intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." *See* 18 U.S.C. § 2511(1)(d); *see also* 18 U.S.C. § 2520.

Emails are electronic communications. *See Borninski v. Williamson*, No. 3:02-cv-1014-L, 2005 WL 1206872, at *10 (N.D. Tex. May 17, 2005) (citing 18 U.S.C. § 2510(12)). To survive here, though, Plaintiffs must have pled sufficient facts to plausibly show that an interception occurred. *See* 18 U.S.C. § 2511(1)(a), (d). In this context, "'intercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4). "The Fifth Circuit has held that 'electronic communications' cannot be 'intercepted' for purposes of the [ECPA] when those communications are in electronic storage." *Healix*, 747 F. Supp. at 743. Electronic storage means: (1) "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission

thereof;" and (2) any storage of such communication by an electronic communication service for purpose of backup protection of such communication." 18 U.S.C. § 2510(17). In effect, then, "the interception must be contemporaneous with the transmission"—"[t]he person intercepting must access the communication while it is actually in the process of traveling to its destination." *Borninski*, 2005 WL 1206872, at *10.

Plaintiffs' FAC alleges that Nugent "access[ed Roberts's] email communications through her personal laptop and began forwarding a number of those communications to her employer's owner, Kevin West of SES." Doc. 57, FAC ¶ 18. As Nugent notes, however, that is not enough to state a claim under the ECPA—the Fifth Circuit has made plain that stored emails constitute "electronic storage," not "electronic communications" subject to intercept as required to be actionable under Title I of the ECPA. *See Steve Jackson Games, Inc. v. U.S. Secret Service*, 36 F.3d 457, 460–64 (5th Cir. 1994); *see also Speer v. Saenz*, No. H-13-1538, 2015 WL 12551069, at *8 (S.D. Tex. Feb. 19, 2015).

In their Response, Plaintiffs make a persuasive case for why the specific Microsoft Outlook setup employed by Nugent would intercept an electronic communication rather than merely access stored emails. *See* Doc. 66, Pls.' Resp. 7–8. In particular, Plaintiffs say that Nugent "set up a process in Outlook whereby all emails were automatically synced with her laptop computer." *Id.* at 8. That may very well constitute an intercept. But Plaintiffs' FAC omits those claims and instead relies on conclusory allegations such as: "Defendant intentionally obtained and/or intercepted, by device or otherwise, these wire and/or electronic communications, without the knowledge, consent or authorization of Plaintiff." Doc. 57, FAC ¶ 30. As a result, Plaintiffs' FAC fails to plead a plausible claim. For that reason, the Court **DISMISSES without prejudice** Plaintiffs' claims under the ECPA.

3.      Store Communications Act (SCA)

Plaintiffs claim that Nugent violated the SCA by intentionally and unauthorizedly accessing Plaintiffs' emails numerous times while they were stored in electronic systems maintained by Plaintiffs' email service provider, Microsoft Office 365. Doc. 57, FAC ¶ 35. Nugent, by contrast, says that accessing emails on her personal computer falls outside of the SCA's purview and, even if it did not, that Plaintiffs failed to allege facts sufficient to show that her access was unauthorized. Doc. 59, Def.'s Br. ¶¶ 50–55.

Title II of the ECPA, "known as the Stored Communications Act, regulates the intentional access of stored electronic communications and records." *Borninski*, 2005 WL 1206872, at *11. Plaintiffs filed their claim against Nugent under § 2701(a) of the SCA, which provides that whoever "intentionally accesses without authorization a facility through which an electronic communication service is provided . . . and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished . . . ." 18 U.S.C. § 2701(a). "Any person aggrieved by a violation of [the SCA] may bring a civil action under 18 U.S.C. § 2707 to recover from the person or entity [that] engaged in the violation." *Borninski*, 2005 WL 1206872, at *11. As noted above, emails are electronic communications. In sum, then, Plaintiffs must show that Nugent unauthorizedly accessed a facility through which an electronic communication system is provided and obtained an electronic communication while it was in electronic storage.[8] *See Frisco Med. Ctr., L.L.P. v. Bledsoe*, 147 F. Supp. 3d 646, 661 (E.D. Tex. 2015).

---

[8]As Nugent notes in her briefing, the SCA sets out two types of violation: (1) flat unauthorized access; and (2) access that exceeds the level of authorization granted. *See* 18 U.S.C. § 2701. Plaintiffs claim implicates only the former. *See* Doc. 57, FAC ¶ 35.

Nugent attacks Plaintiffs' claim on two fronts. First, she claims that she accessed Plaintiffs' emails on her personal computer, which does not qualify as a "facility" under the SCA. Doc. 59, Def.'s Br. ¶ 52. Nugent cites to Fifth Circuit authority to support her claim that "one's personal computer is not a facility within the statute. *Id.* (citing *Garcia v. City of Laredo*, 702 F.3d 788, 792–93 (5th Cir. 2012)). The same authority, however, clarifies that information stored temporarily on servers "pending delivery or for purposes of backup protection" are "protected electronic storage under the statute." *Garcia*, 702 F.3d at 793. Plaintiffs allege that Nugent, while using her personal laptop as a conduit, accessed their emails stored on Microsoft's servers. Doc. 57, FAC ¶ 17. So while Nugent's laptop does not qualify as a "facility," the server she accessed using it plausibly does. *See Garcia*, 702 F.3d at 793. Thus, the Court finds Nugent's position here unpersuasive.

Second, Nugent, claims that "Plaintiffs fail to allege as a fact [her] lack of authorization" to access Plaintiffs' emails. Doc. 59, Def.'s Br. ¶ 53. To support her argument, Nugent points to Plaintiffs' admission that Nugent, apparently with Plaintiffs' authorization, set up Plaintiffs' email accounts and created Roberts's password. *Id.* ¶¶ 53–55 (citing Doc. 57, FAC ¶ 16). The Court disagrees with Nugent's reasoning here—authorizing someone to set up an email account does not grant that person carte blanche to browse through your messages after hours. The next paragraph in Plaintiffs' FAC shows as much:

> 17.     During this deposition, Ms. Nugent revealed for the first time that when she set up Chris Roberts['s] email service, she also configured an email application, Microsoft Outlook[,] on her personal laptop to allow her to access Chris Roberts'[s] email. This action was done without Roberts'[s] or ISC's authorization. This configuration allowed Ms. Nugent full access to all of Mr. Roberts'[s] ISC email communications both before and after her employment with ISC.

Doc. 57, FAC ¶ 17. Taking all of Plaintiffs' claims here as true, the Court can draw the reasonable inference that Nugent is liable for the misconduct alleged. For that reason, the Court **DENIES** her request to dismiss Plaintiffs' SCA claim.

## IV.

## CONCLUSION

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Nugent's Combined Rule 12 Filing. The Court **DENIES** her requests to: (1) abstain from exercising jurisdiction under the *Colorado River* doctrine; (2) transfer or dismiss this case under the doctrine of *forum non conveniens*; and (3) dismiss Plaintiffs' SCA claim. But the Court **GRANTS** Nugent's request to dismiss Plaintiffs' CFAA and ECPA claims. To that end, the Court **DISMISSES without prejudice** Plaintiffs' CFAA and ECPA claims but also **GRANTS** Plaintiffs leave to amend those claims by no later than **March 24, 2017**.


**SO ORDERED.**

**SIGNED: February 24, 2017.**


_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE