IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INSURANCE SAFETY CONSULTANTS, LLC, et al., | § § § § | |
| Plaintiffs, | § | |
| v. | § § | Cause No. 3:15-cv-2183-BT |
| CARRI D. NUGENT, | § § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

In this memorandum opinion, the Court sets out its findings of fact and conclusions of law following a bench trial held in this civil action arising out of a business dispute in which Plaintiffs Insurance Safety Consultants, LLC and Christopher Roberts bring claims against Defendant Carri Nugent under the Stored Communications Act and Electronic Communications Privacy Act for alleged unlawful email disclosures occurring after June 29, 2013. *See* Fed. R. Civ. P. 52(a)(1) (requiring trial court in nonjury cases to find facts specially and state separately its conclusions of law). All findings of fact are based on a preponderance of the evidence standard. The Court's memorandum opinion complies with the level of detail the Fifth Circuit requires for findings of fact and conclusions of law. *See, e.g.*, *Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998) (discussing standards). Though the Court carefully considered the trial testimony and exhibits, it has not set out its findings and conclusions in punctilious detail, slavishly traced the claims issue-by-issue and witness-by-witness, or indulged in

exegetics, parsing or declaiming every fact, nuance, and hypothesis. *Id*. Instead, the Court's memorandum opinion contains findings and conclusions that provide a clear understanding of the basis for the Court's decision. *See id*.

## Background

Chris Roberts (Roberts) and Kevin West (West) owned Safety and Environmental Solutions, LLC (SES). Proposed Jt. Order 3 (ECF No. 205). Defendant Carri D. Nugent (Nugent) worked for SES, but after Roberts and West had a dispute about SES's ownership, she began working for Insurance Safety Consultants, LLC (ISC) in January 2013. *Id*. As part of her new job, Nugent used her personal laptop computer to set up email accounts for herself and Roberts at ISC. Tr. 24-25 (ECF No. 218). Nugent had access to Roberts's ISC email account on her laptop. *Id*. 27:24-28:10.

Also in January 2013, West and SES filed a lawsuit against Roberts and ISC in the 192nd Judicial District of Dallas County, Texas. Proposed Jt. Order 3. Nugent was deposed on March 1, 2013, and the state court held a temporary-injunction hearing on April 18, 2013. *Id*. 4. Sometime between March 1, 2013, and April 18, 2013, Nugent and her counsel met with West and SES's counsel. *Id*. Shortly after the April 18, 2013 injunction hearing, ISC terminated Nugent, and she returned to work for SES. *Id*. In her interrogatory responses, Nugent admits she sent Roberts's emails to West on April 22, 2013, and again on December 15, 2013. *Id*. One referenced email was sent May 12, 2014. *Id*.

Roberts and ISC then filed their Original Complaint in this Court on June 29, 2015, later amended, asserting claims against Nugent under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (CFAA), the Electronic Communications Privacy Act, 18 U.S.C. § 2510 (ECPA), and the Stored Communications Act, 18 U.S.C. § 2701 (SCA). Compl. (ECF No. 1); 2d Am. Compl. (ECF No. 130). Nugent also filed a counterclaim against Plaintiffs. Nugent Am. Compl. (ECF No. 49). On September 11, 2018, the undersigned entered Findings, Conclusions, and a Recommendation on Plaintiffs' motion for summary judgment on Nugent's counterclaim and Nugent's motion for summary judgment on Plaintiffs' claims under the CFAA, ECPA, and SCA. FCR (ECF No. 180). The District Judge accepted these Findings, granted Plaintiffs' motion, dismissed Nugent's counterclaims with prejudice, granted Nugent's motion in part, and dismissed Plaintiffs' CFAA claims in totality and Plaintiffs' ECPA and SCA claims, relating to disclosures of intercepted information that occurred before June 29, 2013. Order Accepting (ECF No. 182); Judgment (ECF No. 183). Therefore, only Plaintiffs' ECPA and SCA claims concerning disclosures of intercepted information occurring after June 29, 2013, remained for trial.

Thereafter, the parties waived their right to proceed before the District Judge and consented to have the undersigned United States Magistrate Judge conduct all further proceedings, including the trial and entry of a final judgment. Consent (ECF No. 186). The parties withdrew their demand for a jury trial (ECF No. 207), and the Court conducted a bench trial on August 20, 2019. The parties

later submitted proposed findings of fact and conclusions of law per the Court's instruction.[1] The Court has reviewed the parties' proposed findings of fact and conclusions of law and now finds for Defendant on Plaintiffs' remaining SCA and ECPA claims.

## Legal Standards and Analysis

As Plaintiffs, Roberts and ISC bear the burden of proof on all elements of their SCA or ECPA claims. Plaintiffs must prove each element by a preponderance of the evidence. *United States v. Valdez-Robles*, 37 F. App'x 714, 714 (5th Cir. 2002) (per curiam) (citing *United States v. Barksdale-Contreras,* 972 F.2d 111, 115 (5th Cir. 1992)) ("A preponderance of the evidence means only that it is more likely than not that a fact is true."). The Fifth Circuit has found "no indication . . . that Congress intended for conduct that is clearly prohibited by Title II [SCA] to furnish the basis for a civil remedy under Title I [ECPA] as well." *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 462-63 (5th Cir. 1994); *see also Shefts v. Petrakis*, 2012 WL 4049484, at *4 (C.D. Ill. Sept. 13, 2012) ("[T]he Court must reject Defendants' argument that if the Court finds that Defendants 'accessed' any of Plaintiff's 'stored communications,' it must automatically grant them summary judgment as to Count I, which alleges 'interception.' The Court agrees that the same *conduct* cannot constitute both an 'interception' and an 'accession.'").

---

[1] Plaintiffs' Motion for Sanctions (ECF No. 157) remains pending and will be addressed by separate order.

Accordingly, the Court first evaluates Defendant's conduct under the SCA's criteria.

### I. The Stored Communications Act

The Court finds for Defendant on Plaintiffs' SCA claim. The SCA prohibits "intentionally access[ing] without authorization a facility through which an electronic communication service is provided . . . and thereby obtain[ing], alter[ing], or prevent[ing] authorized access to a wire or electronic communication while it is in electronic storage in such system . . . ." 18 U.S.C. § 2701(a)(1). "[A]n 'electronic communication' is defined as 'any *transfer* of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system . . . but does not include . . . any wire or oral communication . . . .'" *Steve Jackson Games*, 36 F.3d at 461 (quoting 18 U.S.C. § 2510(12)); 18 U.S.C. § 2711(1) (incorporating "the terms defined in section 2510 of this title" into the SCA). Email constitutes an electronic communication within the meaning of the statute. *See Steve Jackson Games*, 36 F.3d at 461-62. "While the SCA does not define the term 'facility,' it does define the terms 'electronic communication service' and 'electronic storage.'" *Garcia v. City of Laredo*, 702 F.3d 788, 792 (5th Cir. 2012). An "'electronic communication service'" is "'any service which provides to users thereof the ability to send or receive wire or electronic communications.'" *Id.* (citing 18 U.S.C. § 2510(15) (incorporated by reference in 18 U.S.C. § 2711(1) of the SCA)). And electronic storage "is defined as '(A) any temporary, intermediate storage of a wire

or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.'" *Cruz Lopez v. Pena*, 2013 WL 819373, at *3 (N.D. Tex. Mar. 5, 2013) (citing 18 U.S.C. § 2510(17)); *see also Steve Jackson Games*, 36 F.3d at 461.

However, electronic storage "encompasses only the information that has been stored by an electronic communication service provider," and not information that an individual stores to his hard drive. *Garcia*, 702 F.3d at 793 (citations omitted). In *Garcia*, Garcia claimed the defendants accessed text messages and images on her phone in violation of the SCA. *Id.* at 790. The Fifth Circuit held that the text messages and photos stored on Garcia's phone were not in electronic storage as defined by the statute, and, therefore, beyond the SCA's scope. *Id.* at 793. Specifically, the court explained, "information that an internet provider stores to its servers or information stored with a telephone company—if such information is stored temporarily pending delivery or for purposes of backup protection—are examples of protected electronic storage under the statute," but "information that an individual stores to his hard drive or cell phone is not in electronic storage under the statute." *Id.* (citing *Freedom Banc Mortg. Servs., Inc. v. O'Harra,* 2012 WL 3862209, at *8-9 (S.D. Ohio Sept. 5, 2012); *Hilderman v. Enea TekSci, Inc.,* 551 F. Supp. 2d 1183, 1205 (S.D. Cal. 2008); *Bailey v. Bailey,* 2008 WL 324156, at *6 (E.D. Mich. Feb. 6, 2008) (unpublished)).

The Court finds Plaintiffs did not carry their burden to prove Roberts's emails were in electronic storage. For Nugent to be liable under the SCA, Plaintiffs would have to prove that she intentionally accessed "a facility through which an electronic communication service is provided" without authorization to obtain Roberts's emails while they were in electronic storage. Here, Nugent "set up [her] laptop . . . to get copies of Mr. Roberts' emails" when she set up ISC's email accounts using Office 365. Tr. 75:22-25; 76:1-21; 78:12-25; 79:1-18; 82:11-18. Robert Shofkom, a Microsoft-certified systems engineer, testified at trial that "Office 365 is Microsoft's software" that enables "the client machines . . . [to] talk with the Microsoft exchange server." *Id*. 119:1-5. He explained that it uses the "MAPI protocol" to synchronize email across devices. *Id*. 119:1-25; 120:1-7; 121:5-8. Outlook is the email client on a computer that communicates with the Office 365 exchange server. *Id*. 121:11-13. "[A]n outgoing email out of Outlook would go . . . from the client to the server, and then from the server it would go across the internet . . . to the various users." *Id*. 123:9-16. The Office 365 exchange server must have stored these emails temporarily pending delivery or for backup protection for Roberts's emails to be considered "in electronic storage" at the time of Nugent's access. *See* 18 U.S.C. § 2510(17). Though "an OST file is what the MAPI protocol creates and what Office 365 creates as a storage container for all the mail," Plaintiffs elicited no testimony regarding whether Microsoft's "exchange server" stores emails, even temporarily. The name, "exchange server," seems to suggest it

7

does not. The Court, thus, finds Plaintiffs did not carry their burden to prove by a preponderance of evidence that Roberts's emails were in electronic storage.

Even if Plaintiffs had carried their burden on this element, the Court finds Plaintiffs' SCA claim would fail because 18 U.S.C. § 2701(a)(1) is not dependent on any "disclosure" or "use" like §§ 2511(1)(c) and (d). Rather, the SCA depends on the intentional "access" of stored, electronic communications. Nugent testified that she was sent home on April 19, 2013, where she remained until May 2, 2013. Tr. 80:10-13. During that time, she realized her ISC email access had been cut off, which would also include access to Roberts's emails. *Id.* 80:14-20. Accordingly, the Court finds any disclosure of Roberts's emails after that would have involved accessing information already stored on Nugent's own personal laptop before June 29, 2013, and would be beyond the SCA's purview. Accordingly, Plaintiffs' SCA claim fails as a matter of law.

## II. The Electronic Communications Privacy Act

The Court also finds for Defendant on Plaintiffs' ECPA claim. The ECPA provides a cause of action against a person who "intentionally uses [or discloses], or endeavors to use [or disclose], the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. §§ 2511(1)(c), 2511(1)(d), 2520(a).[2]

---

[2] The ECPA also prohibits "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept, any wire,

8

"'[I]ntercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4); *Steve Jackson Games*, 36 F.3d at 460. Email can be intercepted. *Steve Jackson Games*, 36 F.3d at 461. "[I]n the Fifth Circuit, interception must occur contemporaneously with transmission." *Quantum Fitness Corp. v. Cybex Int'l, Inc.*, 2016 WL 6909284, at *4 (S.D. Tex. Feb. 10, 2016) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1535 (5th Cir. 1994)); *see also United States v. Denman*, 100 F.3d 399, 403 (5th Cir. 1996) (citation omitted) ("We held that an interception 'requires, at the least, involvement in the initial use of the device contemporaneous with the communication to transmit or preserve the communication.'"). "What qualifies as a contemporaneous interception is hotly disputed in most ECPA cases." *Krise v. SEI/Aaron's, Inc.*, 2017 WL 3608189, at *10 (N.D. Ga. Aug. 22, 2017).

Some courts have noted the contemporaneity requirement could "substantially limit the applicability of the [ECPA] to electronic communications," and others have held that the ECPA "still applies to electronic communications where a person forwards or reroutes emails to an alternative email address." *Speer v. Saenz*, 2015 WL 12551069, at *8 (S.D. Tex. Feb. 19, 2015) (citing *United States v. Steiger,* 318 F.3d 1039, 1047-51 (11th Cir. 2003); *U.S. v. Szymuszkiewicz*, 622

---

oral, or electronic communication," regardless of any disclosure. 18 U.S.C. § 2511(1)(a). However, the Court previously determined that Plaintiffs' ECPA claims are time-barred except for disclosures occurring after June 29, 2013. FCR (ECF No. 180); Order Accepting (ECF No. 182); Judgment (ECF No. 183).

F.3d 701, 703 (7th Cir. 2010) (Easterbrook, J.)). When an employee forwarded copies of his supervisor's emails to his email address, the Seventh Circuit found the employee's conduct to be an "interception," "even though the communication was forwarded by the recipient email address and not intercepted during transit." *Id.* (citing *Szymuszkiewicz*, 622 F.3d at 705-06); *Szymuszkiewicz*, 622 F.3d at 703. The Seventh Circuit reasoned that to be contemporaneous, the interception need not occur during transit so long as it occurs simultaneously to transmission. *Id.* (citing *Szymuszkiewicz*, 622 F.3d at 705-06); *see also Shefts*, 2012 WL 4049484, at *7 ("[T]he key point is whether the device in question allows the communications to be acquired contemporaneously with transmission.").

However, most courts applying *Steve Jackson Games'* contemporaneity requirement have found "that [an] interception must . . . occur during transit or 'in flight,' likening the acquisition to an interception in a football game." *Speer*, 2015 WL 12551069, at *8 (citing *Steiger*, 318 F.3d at 1049-50 (holding that under *Steve Jackson Games*, the acquisition must take place during "flight"); *Glob. Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009) ("In other words, these statutes give 'intercept' its common meaning, which is perhaps best understood through a football analogy. In American football, a ball can only be intercepted when it is 'in flight.'"); *Decuyper v. Flinn*, 2014 WL 4272720, at *3 (M.D. Tenn. Aug. 29, 2014) *adopted as modified by* 2014 WL 4954661 (M.D. Tenn. Sept. 30, 2014) (noting that *Szymuszkiewicz* is not consistent with *Steve Jackson Games*, and that the latter requires that the interception be "in flight"); *Zaratzian*

*v. Abadir*, 2014 WL 4467919, at *8 (S.D.N.Y. Sept. 2, 2014) (noting with approval that the analysis in *Szymuszkiewicz* comports with the theory of contemporaneity espoused in *Steve Jackson Games*, in contrast)). Accordingly, the Court distinguishes between electronic communications in transit and in storage. Once an email is received, it is no longer in transit and is, therefore, stored. *See Healix Infusion Therapy, Inc. v. Helix Health, LLC*, 747 F. Supp. 2d 730, 744 (S.D. Tex. 2010); *Speer*, 2015 WL 12551069, at *8. Subsequent access to that email constitutes access to a stored communication, not an interception. *Speer*, 2015 WL 12551069, at *8 (citing *Healix Infusion Therapy*, 747 F. Supp. 2d at 744 ("Storing emails does not constitute an interception or other Wiretap Act violation.")). Because the ECPA applies only to emails obtained in transit, the critical question is "whether the emails were rerouted to new email addresses during transit, or were forwarded to . . . email addresses after receipt." *Id*.

Here, the Court finds Plaintiffs did not carry their burden to prove Nugent intercepted Roberts's emails, or obtained them while they were in transit. For Nugent to be liable under the ECPA, Plaintiffs would have to prove that she intentionally "used" or "disclosed" information "obtained through the interception of a[n] . . . electronic communication." 18 U.S.C. §§ 2511(1)(c), (d). As discussed above, to qualify as an interception under the Fifth Circuit's contemporaneity requirement, Nugent must have obtained Roberts's emails while they were in transit. At trial, Nugent testified that she "was the administrator of [ISC's] Office 365 account," and that, as admin, she had the ability to "assign who can see . . . [a]

11

shared email folder." Tr. 76:8-15. In other words, she could have set up ISC's email accounts "so that automatically [she] would have gotten copies of all—of each person['s] . . . emails as they were being sent and received[.]" *Id*. 76:16-21. She also testified, however, that "there's no way for [her] to check what the settings [were]" and that she "didn't believe" she set up Chris Roberts's email this way. *Id*. 77:21-25. At her deposition, Nugent testified that email accounts cannot be set up through Outlook, you must "actually set up the accounts within the Microsoft website[.]" *Id*. 78:14-21. She further testified that after setting up the accounts, she "would have had to have taken an affirmative step to go into Outlook and set up [her] Outlook to receive Mr. Roberts' emails." *Id*. 79:6-16. However, there is no evidence establishing whether Nugent set up Roberts's email account to forward copies of his emails to her account, whether she employed the shared-folder function, or whether she took some other "affirmative step." Indeed, Charles Keith Black, a forensic examiner, was unable to examine Nugent's Outlook settings on her laptop because "[t]hat information was lost during the reset"—Nugent's laptop "lack[ed] . . . a user profile" when it was delivered to him for examination.[3] *Id*. 129:5-16; 138:11-14. On the record before it, the Court cannot find that it is more likely than not that Nugent obtained access to Roberts's emails in transit. Therefore, Plaintiffs have not carried their burden to prove by a preponderance of

---

[3] The day before trial began, Nugent filed a Motion to Exclude Black's Expert Opinions. (ECF No. 215). The Court ruled that Nugent waived her objections to Black's testimony by failing to raise her objections in a timely manner and DENIED the Motion. Tr. 69: 4-6.

the evidence that Nugent intercepted Roberts's emails. Accordingly, the Court need not reach whether any "disclosure" occurred.

Because Plaintiffs have not met their burden on their SCA and ECPA claims, the Court pretermits consideration of damages.

## Conclusion

For the reasons explained above, the Court finds for Defendant Carri Nugent on Plaintiff Insurance Safety Consultants, LLC and Christopher Roberts's Stored Communications Act and Electronic Communications Privacy Act claims with respect to disclosures occurring after June 29, 2013.

The Court will enter a separate judgment.

**SO ORDERED**.

December 31, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE